The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions of law as those reached by the Deputy Commissioner with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. The defendant-employer was self-insured and Gallagher Bassett Services was the servicing agent.
4. Plaintiffs average weekly wage was $306. 80 yielding a compensation rate of $204.53.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit #1. These records consist of discovery relating to this case and medical documentation from New Bern Internal Medicine, New Bern Family Practice and New Haven Regional Medical Center.
6. The issues before the Commission are: (i) whether plaintiff contracted an occupational disease as a result of her employment with defendant-employer; (ii) if so, what compensation, if any, is due plaintiff.
***********
 RULINGS ON EVIDENTIARY MATTERS
The objections raised in the depositions of Edwin Bell, M.D., Joseph R. Overby, M.D., and Joni Barrie, R. N., are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
***********
Based upon all of the competent evidence from the record herein, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was a high school graduate who has previously worked on a farm, ran a snack bar at Nichols, worked in a sewing room, worked as a cashier and stock clerk for a New Bern department store, and worked as a waitress, cook and dishwasher in a restaurant.
2. Plaintiff became employed at Hatteras Yachts in 1996. Plaintiff began her work as a prepper in the paint shop. Plaintiff had sought this position because of the high wages being paid. Plaintiff misrepresented her abilities and experience on her application by claiming previous experience using bondo, a substance frequently used in the paint shop.
3. Prior to her employment with defendant-employer, plaintiff had a history of recurring rhinitis due to seasonal allergies, sinusitis and bronchitis.
4. Plaintiff contends while she was working as a prepper she developed respiratory problems. However, plaintiffs team leader, Sharon Arthur, and trainer, Deena Young, never observed plaintiff experience respiratory distress or problems while she was working.
5. On April 9, 1997, plaintiff reported to the nurses station complaining of bronchitis and asking for a referral to New Bern Family Practice. Dr. Overby examined plaintiff at the New Bern Family Practice and determined plaintiffs respiratory responses were clear. Dr. Overby indicated plaintiff was breathing clearly.
6. Plaintiff was excused from work by Dr. Overby based upon the same symptoms that had appeared with prior health problems in 1991 and 1993 through 1995. Plaintiff was out of work from April 9, 1997 through April 20, 1997.
7. Plaintiff returned to work on April 21, 1997, at which time she again returned to the nurses station and requested to return to the New Bern Family Practice. Plaintiff was referred to the New Bern Family Practice and Dr. Overby determined her lungs were clear again.
8. On April 21, 1997, plaintiff was directed by Dr. Overby to avoid areas of work in paint, respirators, etc. for one week. Plaintiff reported to nurse Joni Barrie that plaintiff was to be out of work as directed by Dr. Overby. Plaintiff also told Ms. Barrie she had planned to be out of work with her child and also for some outpatient surgery during this time. Plaintiff was to report to her supervisor, Mr. Mallard, upon her return to work.
9. Plaintiff remained out of work through April 29, 1997. On April 28, 1997, plaintiff returned to Dr. Overbys office and indicated she was feeling better and work had allowed her to avoid areas where painting was done. Plaintiff still complained of wheezing.
10. Dr. Overby gave plaintiff a note indicating her lungs were clear and she could return to work regular duty on April 29, 1997.
11. Plaintiff returned to work on April 30, 1997 and continued to work through May 8, 1997. Plaintiff did not return to the nurses station during this time to indicate any further problems relating to her work.
12. On May 8, 1997, plaintiff went to the emergency room complaining of being faint and having shortness of breath. Plaintiff indicated to the emergency room physician that she had asthma; however, the hospital records indicate the plaintiffs oxygen saturation was ninety-nine percent. A normal reading of oxygen saturation ranges from ninety-five to one hundred percent. Plaintiffs diagnosis at the emergency room was bronchitis.
13. On May 9, 1997, plaintiff returned to Dr. Overby indicating she had been to the emergency room and was complaining of problems at work due to sanding. Dr. Overbys objective tests indicated plaintiff was within normal limits or better. Plaintiffs pulmonary function was normal and plaintiffs lungs were clear. Plaintiffs oxygen saturation level was one hundred percent.
14. Dr. Overby did not take plaintiff out of work as a result of the May 9, 1997 examination. Dr. Overby indicated plaintiff should return to work as quickly as possible.
15. Plaintiff returned to defendant-employer but did not attempt to return to work or receive accommodations relating to her circumstances. Plaintiff returned to defendant-employer and requested short-term disability forms from the insurance administrator. Plaintiff never presented any written documentation indicating she had been written out of work after her May 9, 1997 visit.
16. On May 13, 1997, plaintiff notified her supervisor she had been taken out of work by her physician until June 6, 1997. There is no written documentation or testimony from Dr. Overby taking plaintiff out of work during this period.
17. Plaintiff was referred by Dr. Overby to Edwin Bell, M.D., a pulmonary specialist. Plaintiff presented to Dr. Bell on June 6, 1997 and provided to Dr. Bell her version of the history of her illness. The history recorded by Dr. Bell contains numerous errors. Plaintiff did not indicate that she had a recurring history of rhinitis, sinusitis and bronchitis in 1991 and in 1993 through 1995. Plaintiff incorrectly indicated the oxygen saturation at the emergency room on May 8, 1997. Plaintiff also erroneously indicated that Dr. Overby had taken her out of work. Plaintiff associated most of her problems with exposure to a bonding agent called "white streak bondo.
18. Dr. Bell determined plaintiff was suffering from respiratory problems and took plaintiff out of work.
19. Plaintiff received short-term disability benefits after seeing Dr. Bell.
20. Defendant-employer attempted to find plaintiff a job within her restrictions. This job was working outside washing boats in the launch and making them ready. The launch and make ready area was under an open air shelter and the work involved washing boats to get them ready before they were to be delivered to the customer.
21. The launch and make ready position was approved by Dr. Bell.
22. Plaintiff did return to work at the launch and make ready position and did not have problems as a result of the assignment. Plaintiffs supervisor, Belinda Rackley, indicated she never observed plaintiff having an asthma attack or other problems relating to work at the launch and make ready area. Plaintiff worked in this area from July 15, 1997 through August 11, 1997.
23. Plaintiff contends the boat washing did not bother her but that the paint smell in the air caused problems.
24. On August 11, 1997 plaintiff presented to the nurses station complaining of chest pains and shortness of breath.
25. Dr. Bell saw plaintiff on August 11, 1997 and excused plaintiff from work for two weeks. During the course of Dr. Bells examination on August 11, 1997, plaintiffs pulmonary function was normal.
26. Plaintiffs follow-up examination on August 25, 1997 indicated an upper respiratory infection. Plaintiffs chest examination was clear with good airflow.
27. On August 26, 1997, plaintiff returned to defendant-employer to discuss short-term and long-term disability. Plaintiff was taken to the shipping and receiving area where she would eventually be reassigned.
28. Plaintiff remained out of work until October 8, 1997 when she was assigned to shipping and receiving. Plaintiffs primary responsibilities were receiving UPS deliveries, checking them against purchase orders and making deliveries throughout the plant.
29. During the time plaintiff was working in shipping and receiving, there was no indication she was experiencing respiratory stress as a result of this assignment.
30. On December 1, 1997, plaintiff returned to the nurses station complaining of pain in her chest. An examination by the plant nurse indicated plaintiffs lungs were clear. Plaintiff requested the plant nurse obtain an appointment with Dr. Bell. Plaintiff indicated diesel fumes from the forklifts were bothering her.
31. Plaintiff was out of work most of the month of December, 1997, in part due to the illness of plaintiffs child.
32. On January 6, 1998, plaintiff presented a note from Dr. Bell which again took her out of work through February 5, 1998.
33. Plaintiff was offered a position within the engineering department. This position was performing clerical work.
34. Loretta Anderson, an asthma sufferer since age twelve, had been placed in the engineering office in January, 1998. Ms. Anderson did not have problems resulting from her job placement.
35. Prior to placing plaintiff in the engineering office, the area was tested for dust. The results of the testing indicated the dust was almost undetectable.
36. Plaintiff was not able to explain at the hearing before the Deputy Commissioner why she was unable to work in the engineering office. Plaintiff indicated some dust bothered her, and going into the manufacturing area to clock in and out also bothered her.
37. Plaintiff had problems unrelated to her work that affected her attendance in the late winter 1997 and spring 1998.
38. On June 2, 1998, plaintiff returned to the nurses station and was seen by nurse Joey Wetherington, who had replaced Joni Barrie. Plaintiff indicated she had had an asthma attack "a few minutes ago. Mr. Wetherington examined plaintiff and found her lungs were clear. Plaintiff indicated she needed to go home. Mr. Wetherington gave her an excuse to go home and as plaintiff was leaving, she went to the bathroom. Upon returning from the bathroom she requested oxygen which was administered. Plaintiffs lungs continued to be clear, however, Mr. Wetherington took plaintiff to the emergency room. The emergency room findings were negative.
39. Plaintiff obtained an excuse to be out of work from June 8, 1998. During the time plaintiff was out of work, she went to a nightclub. Plaintiff danced and consumed alcohol in the smoky club.
40. Plaintiff did return to work on June 22, 1998. On June 23, 1998, plaintiff received her performance evaluation which rated her below the normal expectations for job knowledge, productivity and quality. The evaluation noted plaintiff had low attendance and tardiness.
41. On June 30, 1998, Dr. Bell advised that plaintiff should avoid employment at defendant-employer in order not to exacerbate her symptoms. However, Dr. Bell did not indicate plaintiff was otherwise disabled or vocationally impaired. In fact, Dr. Bell indicated plaintiff is a healthy, asthmatic 32-year old, who, as long as she avoids chemicals which were present at defendant-employer, may be gainfully employed.
42. Dr. Bell could not indicate what exactly causes asthma, which is an ordinary disease of life. Dr. Bell was unable to make a causal connection between plaintiffs symptoms and any chemicals used at defendant-employers business and could only indicate that there is a possibility these chemicals would trigger symptoms of asthma. Dr. Bell acknowledged that on examination plaintiff produced no sputum and had no rattling in her chest or wheezing. Dr. Bell also admitted that the history of complaints given by plaintiff was the biggest factor in his diagnosis.
43. The Deputy Commissioner who presided over the hearing in this matter did not find plaintiffs testimony credible concerning her history of symptoms and complaints she alleges she incurred as a result of chemical exposure in the various jobs plaintiff performed at defendant-employer. The Full Commission declines to overturn this credibility determination, and therefore does not find credible plaintiffs description of symptoms she experienced while working at defendant-employer. Dr. Bells diagnosis of occupational asthma based upon plaintiffs complaints is rejected.
44. Since leaving defendant-employer, plaintiff contends she made application at three employers: Craven Correctional Center, Centura Bank and Dairy Palace. Plaintiff had not gone to the Employment Security Commission. Plaintiff did obtain employment for a two-week period at the Country Store.
45. There is insufficient evidence of record from which to prove by its greater weight that any of the jobs performed by plaintiff at defendant-employer placed plaintiff at an increased risk of developing asthma, as compared to members of the general public not so exposed.
46. There is also insufficient evidence of record from which to prove by its greater weight that plaintiffs asthma is an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public is equally exposed.
47. Plaintiff has failed to prove by the greater weight of the evidence that she is incapable of earning wages as a result of contracting an occupational disease caused by her employment with the defendant-employer.
48. Plaintiff sustained no permanent disability as a result of her exposure, if any, to chemicals while employed by defendant-employer.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has no disease or disability related to causes and conditions which are characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. 97-53(13); Hilliard v. Apex Cabinet Company,305 N.C. 593, 290 S.E.2d 682 (1982); Carroll v. Burlington Industries,81 N.C. App. 384, 344 S.E.2d 287 (1986), affd per curiam,319 N.C. 395, 354 S.E.2d 237 (1987).
2. As a result, plaintiff is entitled to no compensation under the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-52, -53.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This the ______ day of March 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/jth